ORIGINAL

1  William L. Miltner, Esq./SBN 139097
2  Teresa L. Polk/SBN 111975
   MILTNER LAW GROUP, APC
3  ATTORNEYS AT LAW
   Emerald Plaza
4  402 West Broadway, Suite 800
   San Diego, California 92101
5  Telephone (619) 615-5333
6  Telefax (619) 615-5334

FILED

10 AUG 30 PM 4:00

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                          DEPUTY

7  Attorneys for Plaintiffs Joseph Cardenas, Machelle Cardenas, and El Paseo Grande, LLC

8                  UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

11  JOSEPH CARDENAS and MACHELLE          )  Case No.: '10 CV 1808  W       CAB
12  CARDENAS, individuals; and EL PASEO   )
    GRANDE, LLC, an Arizona limited liability )  COMPLAINT FOR:
13  company,                              )
                                          )  1)  DECLARATORY RELIEF;
14                           Plaintiffs,  )  2)  TRESPASS TO REAL PROPERTY
15                                        )  3)  INJUNCTION
           vs.                            )
16                                        )
17  ROBERTSON WHITTEMORE, individually    )
    and as trustee of the SUZANNE         )
18  WHITTEMORE MARITAL TRUST U/D/T,        )
    DATED APRIL 27, 1995, as trustee of the )
19  SUZANNE WHITTEMORE BYPASS TRUST )
    U/D/T, DATED APRIL 27, 1995, and as trustee )
20  of the ROBERTSON WHITTEMORE LIVING )
21  TRUST, DATED APRIL 27, 1995; and DOES )
    1 through 10, inclusive,              )
22                                        )
23                           Defendants.  )
                                          )
24  _____  )

25

26      COME NOW Plaintiffs, JOSEPH CARDENAS, MACHELLE CARDENAS, and EL

27  PASEO GRANDE, LLC, an Arizona limited liability company, and allege as follows:

28  ///

                                          1
                                    COMPLAINT

## NATURE OF ACTION

1.      This is an action for declaratory relief concerning the rights of Plaintiffs in the use of their real property, and a tort action for money damages and an injunction against Defendants regarding Defendants' trespasses to said real property.

## JURISDICTION

2.      Jurisdiction is proper in this Court under 32 U.S.C.A. section 1332(a) because all Plaintiffs are citizens of the State of Arizona, and all Defendants are citizens of the State of California, and the value of the matter in controversy exceeds $75,000.00.

## VENUE

4.      Venue in this action properly lies in the Southern District of California under 28 U.S.C.A. section 1391 in that the Defendant resides in this District and a substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated, within this District.

## THE PARTIES

5.      Plaintiffs Joseph Cardenas and Machelle Cardenas are individuals who are citizens of the State of Arizona, with their principal residence and domicile in the City of Yuma, Arizona. Plaintiff El Paseo Grande, LLC, is an Arizona limited liability company with its principal place of business in the City of Yuma, Arizona.

6.      Defendant Robertson Whittemore is an individual residing in the State of California with his principal residence and domicile in the City of San Diego, California. Defendant Robertson Whittemore is named as a defendant herein individually, as the trustee of the Suzanne Whittemore Marital Trust U/D/T, dated April 27, 1995; as the trustee of the Suzanne Whittemore Bypass Trust U/D/T, dated April 27, 1995; and as the trustee of the Robertson Whittemore Living Trust, dated April 27, 1995. Defendant Robertson Whittemore and the aforementioned trusts are herein collectively and individually referred to as "Whittemore" and "Defendants".

7.      On information and belief, Does 1 through 10 are California citizens for purposes of diversity jurisdiction. Plaintiffs are ignorant of the true names and capacities of Defendants

1  sued as Does 1 through 10, inclusive, and therefore sues these Defendants by such fictitious

2  names. Plaintiffs will amend this Complaint to allege their true names and capacities when

3  ascertained.

### DEMAND FOR JURY TRIAL

4

5  8.  Plaintiffs demand a jury trial.

### COUNT I

6

### (Declaratory Relief – Against All Defendants)

7

8  9.  Plaintiff El Paseo Grande, LLC, an Arizona limited liability company, is the

9  owner of an ocean front residence located at 8466 El Paseo Grande, La Jolla, California

10  (hereinafter the "Cardenas Property"). Said property is also known as Lot 2, Ocean Front

11  Terrace, Map No. 2615, in the City of San Diego, California. Plaintiffs Joseph Cardenas and

12  Machelle Cardenas use the Cardenas Property as an occasional week-end and vacation home,

13  while their primary residence remains in Yuma, Arizona where their children are in school and

14  where Plaintiff Joseph Cardenas maintains his practice as a medical doctor.

15  10.  Whittemore, or some of them, are the owners of the adjacent ocean front

16  residence located at 8470 El Paseo Grande, La Jolla, California (hereinafter the "Whittemore

17  Property"). Said property is also known as Lot 1, Ocean Front Terrace, Map No. 2615, in the

18  City of San Diego, California. The three trusts of which Defendant Robertson Whittemore is

19  trustee are believed to currently co-own the Whittemore Property, while Defendant Robertson

20  Whittemore is the trustee of said trusts and resides at the Whittemore Property full time. The

21  sharing of the three trusts in the Whittemore Property has changed since 1998 as follows: (1) By

22  a grant deed recorded May 20, 1998 as Document #1998-0295299, Robertson Whittemore and

23  Suzanne Whittemore, as co-trustees of former property owner Robertson Whittemore Living

24  Trust, dated April 27, 1995, deeded the Whittemore Property to Suzanne Whittemore, a married

25  woman, as to an undivided 75% as her sole and separate property, and to Robertson Whittemore,

26  a married man, as to an undivided 25% as his sole and separate property, as tenants in common;

27  (2) By a quitclaim deed recorded June 23, 1998, as Document #1998-0382546, Robertson

28  Whittemore quitclaimed his undivided 25% undivided interest in the Whittemore Property to

COMPLAINT

1  himself and Suzanne Whittemore as trustees of the Robertson Whittemore Living Trust, dated

2  April 27, 1995 (thereby leaving Suzanne Whittemore as the owner of the other 75%, as tenants in

3  common); (3) by another quitclaim deed recorded June 23, 1998, as Document #1998-0382547,

4  Suzanne Whittemore quitclaimed her 75% interest in the Whittemore Property to herself and

5  Robertson Whittemore as trustees of the Suzanne Whittemore Living Trust dated April 27, 1995

6  (such that the property was then owned 25% by a Robertson Whittemore Living Trust, and 75%

7  by a Suzanne Whittemore Living Trust); (4) by a document recorded on November 7, 2005 as

8  Document #2005-0967198, Robertson Whittemore recorded an Affidavit of Change of Trustee,

9  changing the trustee of the Robertson Whittemore Living Trust (as 25% owner) to himself as its

10  sole trustee; (5) On September 24, 2008, Robertson Whittemore recorded an Affidavit of Death

11  – Death of a Trustee as Document #2008-0505640, stating that Suzanne Whittemore had become

12  the sole trustee of said trust, that Suzanne Whittemore had died on September 12, 2008, and that

13  Robertson Whittemore was appointed to serve thereafter as the sole successor trustee of the

14  Suzanne Whittemore Living Trust dated April 27, 1995; and (6) On May 4, 2009, Robertson

15  Whittemore recorded a Quitclaim deed as trustee of the Suzanne Whittemore Living Trust dated

16  April 27, 1995, quitclaiming that trust's 75% interest in the property to himself as trustee of the

17  Suzanne Whittemore Marital Trust U/D/T dated April 27, 1995, as to an undivided 59.54881%

18  interest, and to himself as trustee of the Suzanne Whittemore Bypass Trust U/D/T dated April

19  27, 1995, as to an undivided 15.45119% interest, as tenants in common. Accordingly, on

20  information and belief, the current ownership of the Whittemore Property is a 25% undivided

21  interest held by Robertson Whittemore as trustee of the Robertson Whittemore Living Trust,

22  dated April 27, 1995; an undivided 59.54881% interest held by Robertson Whittemore as trustee

23  of the Suzanne Whittemore Marital Trust U/D/T dated April 27, 1995; and an undivided

24  15.45119% interesa held by Robertson Whittemore as trustee of the Suzanne Whittemore Bypass

25  Trust U/D/T dated April 27, 1995, all as tenants in common. Accordingly, Defendant Robertson

26  Whittemore is named herein as an individual defendant and as trustee of each of said three trusts

27       11.    In 2009, Plaintiffs Joseph and Machelle Cardenas purchased the Cardenas

28  Property from its former owner Warner C. Lusardi, trustee of the Warner C. Lusardi Family

1  Trust Dated June 11, 1993, taking title thereto by a grant deed recorded on February 15, 2008 as

2  Document #2008-0080430 in the official records of the County of San Diego. Like Plaintiffs,

3  the previous owner used the Cardenas Property as a vacation home. Plaintiffs now understand

4  that the former owner sold the Cardenas Property after he became frustrated with the demands,

5  behavior, and litigiousness of Defendants. Plaintiffs Joseph Cardenas and Machelle Cardenas

6  deeded the Cardenas Property to Plaintiff El Paseo Grande, LLC by a grant deed recorded on

7  April 13, 2009 as Document #2009-0185639. Plaintiffs Joseph Cardenas and Machelle

8  Cardenas are the owners/trustees of the members of El Paseo Grande, LLC, such that said deed .

9      12.     At the time of the conveyance to Plaintiffs, Plaintiffs had been advised by a

10  preliminary title report that a Declaration of Restrictions, which had been recorded against the

11  property in 1950, was no longer in effect. Said Declaration of Restrictions (hereinafter the

12  "Declaration") was recorded by a former owner of Lots 1 to 5 inclusive of Ocean Terrace

13  (hereinafter the "5 parcels"), in the official records of San Diego County on January 20, 1950 as

14  file number 8163 in Book 3464, Page 218. A true and accurate copy of said Declaration is

15  attached as Exhibit "A" hereto.

16      13.     By the express terms of Paragraph V of the recorded Declaration (Exhibit "A"),

17  said Declaration would "terminate and be of no further force and effect after January 1, 1990"

18  and would not be renewed if the owners of 51% of the 5 parcels filed "a protest or

19  relinquishment of restrictions in the Office of the County Recorder, within the year preceding

20  the year 1989 or any other successive date".

21      14.     The owners of 60% of the 5 parcels executed and recorded a Termination of

22  Restrictions on May 10, 2005 as Document #2005-0394684 in the official records of the County

23  of San Diego. A true and accurate photocopy of said Termination is attached as Exhibit "B"

24  hereto. Plaintiffs were informed of the termination of the Declaration by their preliminary title

25  report prior to taking title to the real property and relied thereon.

26      15.     Defendants did not record any notice of any dispute of the validity of the

27  Termination of the Declaration and did not give Plaintiffs notice of any dispute of said

28  relinquishment before Plaintiffs took title to the Cardenas Property. Accordingly, Plaintiffs

1  were bona fide purchasers without notice of any unrecorded claim of Defendants to hold any

2  real property rights under the Declaration.

3      16.    After taking title to the Cardenas Property, Plaintiffs were approached by

4  Defendants who requested that they execute a document to restore the Declaration. Plaintiffs

5  did not do so.

6      17.    Thereafter, Plaintiffs obtained the services of Morengo & Morton Architects to

7  design a deck remodel project for the Cardenas Residence, and submitted an application for a

8  building permit for said deck remodel project to the City of San Diego. Upon learning of the

9  proposed deck remodel project, Defendants objected that it would interfere with his view across

10 the patio of the Cardenas Property toward a portion of the beach. Thereafter, Defendants began

11 to aggressively fight against City approval of the Cardenas deck remodel project at every step of

12 the proceedings, through a series of appeals based on various unfounded arguments and

13 assertions.

14     18.    On or about December 17, 2009, without Plaintiffs' knowledge or consent, and

15 without having requested permission to do so, Defendants trespassed on Plaintiffs' lawn and

16 placed volley ball polls (or similar objects) into Defendants' lawn, stretching yellow tape across

17 the front of Defendants' property and taking photographs for use in their opposition to

18 Plaintiffs' permit application. Plaintiffs' architect and attorney arrived afterward for a planned

19 meeting with Defendant and Defendant's architect to find that Plaintiff had trespassed on

20 Defendant's property, damaging Plaintiff's lawn.

21     19.    Also on or about December 17, 2009, Defendants provided to Plaintiffs'

22 architect and counsel a copy of a letter by the law firm of Procopio, Cory & Hargreaves, in an

23 unrelated matter, which Defendant contended would support litigation against Plaintiffs if they

24 proceeded with the construction of their deck remodel project.

25     20.    In addition, within the time frame since Plaintiffs took title to the Cardenas

26 Property on October 16, 2007, Defendants have otherwise trespassed on the Cardenas Property

27 by instructing Defendants' party guests, including but not limited to Does 1 through 10, to park

28 in the driveway on the Cardenas Property without Plaintiffs' permission, such that the driveway

1  was blocked by Defendants' social guests while Joseph Cardenas's mother was at home alone,

2  as discovered by Machelle Cardenas's brother when he arrived at the property that day.  On that

3  occasion, Robertson Whittemore asked Machelle Cardenas's brother whether he minded if

4  Whittemore used the driveway of the Cardenas Property while Joseph Cardenas and Machelle

5  Cardenas were not at home, and he was told that it was not acceptable, such that Defendants

6  have known that they have not had permission and that Plaintiffs objected to Defendants'

7  continued use of the Cardenas Property as if it were his own, although without any claim of

8  right or interest to do so, thereby interfering with Plaintiffs' exclusive use of the Cardenas

9  Property by encouraging persons unknown to Plaintiffs to trespass on Plaintiffs' real property.

10        21.    Also during the time since Plaintiffs took title to the Cardenas Property,

11  Defendants have also unlawfully interfered with Plaintiffs' possession of the Cardenas Property

12  by informing members of the beachgoing public  (including but not limited to Does 1 through

13  10 inclusive) that they may use Plaintiffs' real property while Plaintiffs are not at home for

14  recreational, social and other uses, including but not limited to the use of Plaintiffs' lawn to do

15  yoga, the use of Plaintiffs' deck for recreational and social enjoyment, and other activities, all

16  without Plaintiffs' knowledge and consent, thereby interfering with Plaintiffs' exclusive use of

17  the Cardenas Property by encouraging persons unknown to Plaintiffs to trespass on Plaintiffs'

18  real property.  Thereafter, when Plaintiffs were at the Cardenas Property, Plaintiffs have found

19  such beachgoers on their law and have been informed by said beachgoers that Defendant had

20  told such persons that they could use the lawn of the Cardenas Property for such purposes.  In

21  so doing, Defendant conspired with Does 1 through 10 inclusive to trespass on the Cardenas

22  Property.

23        22.    From and since December 17, 2009, Defendant has asserted that the Declaration

24  is binding and effective against Plaintiffs, restricting their ability to construct their deck remodel

25  project, despite the aforementioned recorded Termination of said Declaration, but Defendants

26  have not filed suit against Plaintiffs seeking any court determination of said assertion.

27        23.    On June 30, 2010, Plaintiffs' permit application was considered by a hearing

28  officer of the San Diego Planning Commission and was granted with a condition requiring a

1   certain area of a wall overlooking the beach to be made of clear glass. On August 12, 2010, the

2   full Planning Commission considered appeals from that decision and approved Plaintiffs'

3   permit application in full without the clear glass condition. Thereafter, Defendant filed a further

4   appeal to the City Council which is limited procedurally to an appeal of the City Planning

5   Commission's negative declaration as to environmental issues, and informed Plaintiffs that

6   Defendant still planned to file a civil action against Plaintiffs based upon the alleged continuing

7   effectiveness of the terminated Declaration.

8       24.     The Declaration, whether effective or not, is not an issue pending before the City

9   or the City Planning Commission in that the City of San Diego does not take into consideration

10   the private rights of parties, such as declarations of conditions, covenants and restrictions, in its

11   construction permit approval process. Rather, the administrative proceeding arises out of the

12   applicable building codes and other requirements of law. Accordingly, there is no

13   administrative remedy which must be completed prior to raising the issue of the invalidity of the

14   Declaration, or the issue of Defendant's trespass to real property, before this Court.

15       25.     A controversy has arisen, and now exists, in that Plaintiffs contend, and

16   Defendants dispute, that the Declaration was terminated and is of no remaining force or effect

17   between Plaintiffs and Defendants; that, if the Declaration remains effective to any extent, it is

18   not binding on or effective against Plaintiffs in that they were bona fide purchasers without

19   notice of any such remaining impact of the Declaration; and that, if the Declaration remains

20   effective to any extent, Defendant Whittemore is barred from asserting said Declaration against

21   Plaintiffs under the equitable doctrines of waiver and estoppels in that Defendants took no

22   action to record a notice of any contention that the Declaration was not terminated, took no

23   action to obtain a court order cancelling the termination, and took no other action to withdraw

24   the recorded Termination before Plaintiffs took title to the Cardenas Property, and even to the

25   date of this Complaint; and that Defendants have no legal right to a lateral view of the beach by

26   looking across and through the private deck area of the Cardenas Property such as Defendants

27   have demanded.

28   ///

26.   Plaintiffs now seek a declaration of this Court determining the rights, duties and obligations of the parties and specifically declaring that:

a.   The Declaration has terminated and is of no further force and effect;

b.   If and to the extent the Declaration remains effective for any purpose, it is not effective as against Plaintiffs who are bona fide purchasers for value without notice thereof;

c.   If and to the extent the Declaration remains effective for any purpose, Defendants are barred from asserting the Declaration against Plaintiffs under equitable doctrines including the doctrines of waiver and estoppel.

Wherefore, Plaintiffs pray for judgment as set forth below; and

d.   Defendants have no legal right to a lateral view of the beach by looking across and through the private deck area of the Cardenas Property such as Defendants have demanded.

27.   The value of the Cardenas Property is in excess of $5 million, and the cost of the deck remodel project (including the cost of the permit application process, architects fees, and attorney fees for same) is in excess of $100,000.00, such that the dollar amount in issue in this cause of action for declaratory relief is in excess of the $75,000.00 jurisdictional amount of this Court.

## COUNT II

### (Trespass to Real Property – Against All Defendants)

28.   Plaintiffs incorporate by this reference, and hereby reallege, all of the allegations of Paragraphs 1 through 27 of this Complaint as if set forth in full at this point.

29.   In entering upon Plaintiffs' real property without their permission, as alleged above, while Plaintiffs were not at home, in placing polls in Plaintiff's' lawn without their permission, and otherwise walking across Plaintiffs' lawn and taking photographs outside of the area of a public beach easement, all without Plaintiffs' permission, Defendants, and each of them, intentionally trespassed on Plaintiffs' real property; in instructing Defendants' party guests to park in the driveway on the Cardenas Property, all without Plaintiffs' permission,

1  Defendants, and each of them, intentionally trespassed on Plaintiffs' real property; in instructing

2  members of the beachgoing public that they could use the Cardenas Property for their daily

3  exercise routines and for social activities when the Plaintiffs were not at home, Defendants, and

4  each of them, intentionally trespassed on Plaintiffs' real property; and in other ways as well,

5  Defendants, and each of them, have intentionally and repeatedly trespassed on Plaintiffs' real

6  property, thereby interfering with Plaintiffs' exclusive use of the Cardenas Property.

7       30.    As the proximate result of said continuous and repeated trespasses, by

8  Defendants, and each of them, Plaintiffs are now obtaining a sophisticated security system for

9  the Cardenas Property, which will enable Plaintiffs to determine that trespassers are present on

10  their property while they are away from the Cardenas Property and will enable Plaintiffs to have

11  a security service go to the Cardenas Property in their absence to secure the property from such

12  trespassers. The estimated cost of installing the security system is estimated to be $10,000.00 to

13  $13,000.00, and Plaintiffs will incur additional costs thereafter for 24-hour monitoring and for

14  the services of their security service on each occasion when a trespasser must be removed from

15  the Cardenas Property.

16       31.    As the further proximate result of such trespasses on the Cardenas Property,

17  Plaintiffs have suffered damages according to proof, including but not limited to diminution in

18  the property value, the rental value of the unauthorized use of the Cardenas Property,

19  annoyance, distress, and mental anguish, for all of which Plaintiffs seek an award of monetary

20  damages in the amount of $250,000.00 or according to proof. Such mental anguish includes,

21  but is not limited to, the normal mental anguish that would result from an increased risk of

22  liability for any personal injury that could be suffered by persons entering the Cardenas

23  Property without their knowledge or consent, the loss of privacy and security in the use of the

24  Cardenas Property when Plaintiffs are at that property, and the risk of a future assertion by

25  persons unknown of a public right to use the lawn of the Cardenas Property despite the lack of

26  any legitimate claim thereto, and despite the presence of a sea wall and walkway identifying the

27  boundary between the public beach sand and the private lawn of the Cardenas Property, and

28  otherwise.

32.     In intentionally trespassing on the Cardenas Property, and in intentionally

conspiring with others to trespass on the Cardenas Property, Defendants acted with malice,

oppression and fraud, including but not limited to malice and the reckless disregard of the rights

of Plaintiffs, so as to subject Defendants to an award of punitive damages under California Civil

Code sections 3294.

WHEREFORE, Plaintiffs pray for judgment as set forth below.

## COUNT III

### (Injunction – Against All Defendants)

33.     Plaintiffs incorporate by this reference, and hereby reallege, all of the allegations

of Paragraphs 1 through 32 of this Complaint as if set forth in full at this point.

34.     Money damages are inadequate for the aforementioned trespasses and conspiracy

to trespass against the Cardenas Property in that such trespasses affect the Plaintiffs' right to the

exclusive enjoyment of their real property and otherwise.  On information and belief, such

trespasses will continue if not enjoined by an order of this Court.

35.     Plaintiffs therefore now seek a temporary restraining order, preliminary injunction

and permanent injunction compelling Defendants to For a temporary restraining order,

preliminary injunction and permanent injunction compelling Defendants to (1) refrain from

entering the Cardenas Property except upon receipt of written authorization from Plaintiffs; and

(2) to refrain from telling people that they may use or enter Plaintiffs' property except upon

receipt of written authorization from Plaintiffs.

WHEREFORE, Plaintiffs pray for judgment as set forth below, against Defendants and

each of them:

1.  For an order of this Court declaring the rights, duties and obligations of the parties

and specifically declaring that:

a.      The Declaration has terminated and is of no further force and effect;

b.      If and to the extent the Declaration remains effective for any purpose, it is

not effective as against Plaintiffs who are bona fide purchasers for value without

notice thereof;

c.    If and to the extent the Declaration remains effective for any purpose, Defendants are barred from asserting the Declaration against Plaintiffs under equitable doctrines including the doctrines of waiver and equitable estoppel; and

d.    Defendants have no legal right to a lateral view of the beach by looking across and through the private deck area of the Cardenas Property such as Defendants have demanded.

2.  For money damages in the amount of $250,000.00 or according to proof;

3.  For punitive damages according to proof;

4.  For a temporary restraining order, preliminary injunction and permanent injunction compelling Defendants to (1) refrain from entering the Cardenas Property except upon receipt of written authorization from Plaintiffs; and (2) to refrain from telling people that they may use or enter Plaintiffs' property except upon receipt of written authorization from Plaintiffs;

5.  For costs of court incurred herein; and

6.  For such other relief as to this Court may seem just and proper.

Date: August 30, 2010                          MILTNER, POLK & MENCK, APC

                                               By:
                                               William L. Miltner, Esq.
                                               Teresa L. Polk, Esq.
                                               Attorneys for Plaintiffs
                                               Joseph Cardenas, Machelle Cardenas, and El Paseo Grande, LLC

EXHIBIT A

BOOK 3464 PAGE 218

## DECLARATION OF RESTRICTIONS

THIS DECLARATION OF RESTRICTIONS, made this 20th day of January, 1950, by ALICE J. EWING, designated as the "OWNER", the owner in fee simple of all that real property situated in the City of San Diego, County of San Diego, State of California, and more particularly described as follows:

Lots 1 to 5 inclusive of Ocean Terrace, according to Map thereof No. 2615, filed in the Office of the County Recorder of San Diego County, January 20, 1950.

NOW, THEREFORE, this Declaration of Restrictions,

## WITNESSETH:

### I

That for the purpose of designating and creating certain conditions and restrictions upon all of said above described parcels for the direct benefit of each of the other of said described parcels, the following terms, conditions, covenants, restrictions, will apply to the above described property and each of the separate parcels thereof as well before the execution and delivery of a deed to any buyer thereof conveying the title to said property to such buyer, as after said deed shall have been executed and delivered, and shall operate as covenants running with the land, being hereby created as mutual equitable servitudes in favor of each and every portion of said lots as against each and every other portion thereof as hereinabove described.

### II

IT IS UNDERSTOOD AND AGREED that every conveyance of said property is, and shall hereafter be made and accepted, and said real property is and shall hereafter be granted only upon and subject to the express conditions, provisions, restrictions and covenants herein referred to and shall bind the parties hereto, and their heirs, devisees, legatees, executors, administrators, successors and assigns.

### III

Such conditions are imposed upon said real property as an obligation or charge against the same for the benefit of each and every lot hereinabove described, and the owner and owners thereof, and with the rights of enforcement of said conditions, and each of them, vested in the owner or owners of any one or more of said parcels of real property.

### IV

Said conditions are to be as follows, to-wit:

FIRST: That any building erected on said lots shall be placed at least 30 feet East of the Sea Wall as said Sea Wall is shown on said Map of Ocean Terrace No. 2615.

BOOK 3464 PAGE 219

SECOND: No hedge, fence, trees, plants or any other physical objects shall be placed in the 30 foot ocean front set-back area which would interfere with the view of the other lot owners. Maximum height of planting in this area is to be 36 inches or 3 feet.

THIRD: There shall be a minimum of 5 foot side yard set-back for each lot.

FOURTH: Any house that is built on this tract shall be submitted for approval to an architectural jury consisting of the owners of the property or a committee appointed by the majority of the owners. It is understood, however, that size and price are not prime consideration for approval. It is also understood that all roofs of such buildings shall be pitched as opposed to the so-called flat roofs.

FIFTH: That any portion of any building erected in the area 100 feet East of the Sea Wall, as said Sea Wall is shown on said Map of Ocean Terrace No. 2615 ... shall be restricted to one story in height.

V

That the foregoing restrictions and covenants shall terminate and be of no further force and effect after January 1, 1990, but will automatically be renewed thereafter for successive periods of ten years unless the owners of fifty-one per cent (51%) of the above described parcels of real property shall file a protest or relinquishment of restrictions in the Office of the County Recorder, within the year preceding the year 1939 or any other successive date, as provided herein.

VI

That any breach or violation of the foregoing conditions, covenants or restrictions shall cause all the legal and/or equitable title to the premises with respect to which the breach occurs, together with the improvements thereon and appurtenances thereto belonging, to be forfeited to and revert to the owners, or their successors or assigns, provided, however, that the breach of any such conditions, covenants or restrictions, or the re-entry or reversion of title by reason thereof, shall not render invalid the lien of any mortgage or trust deed made for value upon said premises affected by such breach or forfeiture. As cumulative additional remedy, any such breach or violation, or the continuance thereof, may be enjoined, abated or remedied by appropriate proceedings on the part of the owner or any subsequent owner of any parcel of the real property. No waiver of, or acquiescence in, any breach of any of the covenants, conditions or restrictions herein contained shall be construed as a waiver of or acquiescence in any other or successive breach of the same or any other covenant, condition or restriction.

IN WITNESS WHEREOF, the OWNER has affixed her signature the day and year first above written.

*Alice L. Ewing*
Alice L. Ewing

-12-



BOOK 3464 PAGE 220

State of _California_
County of _San Diego_ } ss.

On _June 20,_ 1950
before me, the undersigned, a Notary Public in
and for said County and State, personally appeared
_Eli... J. Long_

... be the person... whose name
... within instrument and acknowledged
... executed the same.

WITNESS my hand and official seal.

_Frank C. Sanborn_
Notary Public in and for said County and State.

* 8458874

When recorded mail to

UNION TITLE INSURANCE AND TRUST COMPAN.

INDEXED

_K. Long_

DOCUMENT NO. 8163
RECORDED AT REQUEST OF
UNION TITLE INSURANCE AND TRUST CO.

JAN 20 1950
at 25 MINUTES PAST 10
BOOK 3464 PAGE 218
OFFICIAL RECORDS
San D ego County, C lifornia
FRED N. KIMBLE, County Recorder

9.40 AZ

13

RECORDED AT THE REQUEST OF
CHICAGO TITLE COMPANY
**SUBDIVISION DEPT.**



DOC # 2005-0394684

RECORDING REQUESTED BY:

MAY 10, 2005    3:30 PM

OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:            26.00
PAGES:               7

AND WHEN RECORDED
RETURN TO:



Seltzer Caplan McMahon Vitek
750 B Street, Suite 2100
San Diego, California 92101
Attn: David J. Dorne, Esq.



2005-0394684

Space above this line for Recorder's use

**16164**

termanation
~~RELINQUISHMENT OF RESTRICTIONS~~

WHEREAS, the Declaration of Restrictions recorded on January 20, 1950 in the Office of the County Recorder of San Diego County in Book 3464, beginning at page 218, imposes certain conditions and restrictions on the development commonly known as "Ocean Terrace," located in the City of San Diego, County of San Diego, State of California. The Ocean Terrace properties are more particularly described as follows:

Lots 1 to 5 inclusive of Ocean Terrace according to Map thereof No. 2615, filed in the Office of the County Recorder of San Diego County, January 20, 1950.

WHEREAS, Paragraph V of the Declaration of Restrictions provides that the owners of fifty-one percent of the parcels governed by the Declaration of Restrictions may terminate the restrictions and covenants by filing a relinquishment of restrictions in the Office of the County Recorder.

WHEREAS, Ocean Terrace currently consists of 5 lots, with 5 different owners.

NOW, THEREFORE, three of the five property owners, constituting sixty percent of the owners of the parcels governed by the Declaration of Restrictions, elect to terminate the covenants and restrictions contained in the Declaration of Restrictions. By executing and recording this Relinquishment of Restrictions, the owners of the parcels governed by the Declaration of Restrictions hereby terminate the Declaration of Restrictions, effective as of the date of recording of this Relinquishment of Restrictions in the office of the San Diego County Recorder.

///

///

///

This document filed for record by Chicago Title Company as an accommodation only. It has not been examined as to its execution or as to its effect upon the title.

Page 1 of 3

IN WITNESS WHEREOF, the undersigned owners elect to terminate the restrictions and covenants set forth in the Declaration of Restrictions as of the date of recording of this Relinquishment of Restrictions in the office of the San Diego County Recorder. This Declaration may be executed in one or more counterparts, each of which shall be deemed an original, and said counterparts shall constitute one and the same document.

**Warner C. Lusardi Family Trust Dated June 11, 1993**
**Owner of Ocean Terrace, Lot 2:**

By: _Warner C. Lusardi_
Warner C. Lusardi
Trustee, Warner C. Lusardi Family Trust
dated June 11, 1993

Legal Description:   Lot 2 of Ocean Terrace, in the City of San Diego, County of San Diego, State of California, according to map thereof no. 2615 filed in the office of the County Recorder of San Diego County on January 20, 1950; excepting therefrom that portion thereof heretofore or now lying below the mean high tide line of the Pacific Ocean.

APN:          346-050-02

Address:      8466 El Paseo Grande

**Nicolas and Patricia Marsch**
**Owner of Ocean Terrace, Lot 4:**

_____
Nicolas Marsch

_____
Patricia Marsch

Legal Description:   Lot 4 of Ocean Terrace, in the City of San Diego, County of San Diego, State of California, according to map thereof no. 2615 filed in the office of the County Recorder of San Diego County on January 10, 1950; excepting therefrom that portion, if any, heretofore or now lying below the mean high tide line of the Pacific Ocean.

.APN:         346-050-04-00

Address:      8460 El Paseo Grande

*Signature block continued on next page*

IN WITNESS WHEREOF, the undersigned owners elect to terminate the restrictions and covenants set forth in the Declaration of Restrictions as of the date of recording of this Relinquishment of Restrictions in the office of the San Diego County Recorder. This Declaration may be executed in one or more counterparts, each of which shall be deemed an original, and said counterparts shall constitute one and the same document.

**Warner C. Lusardi Family Trust Dated June 11, 1993**
**Owner of Ocean Terrace, Lot 2:**

By: _____

   Warner C. Lusardi
   Trustee, Warner C. Lusardi Family Trust
   dated June 11, 1993

Legal Description:   Lot 2 of Ocean Terrace, in the City of San Diego, County of San Diego, State of California, according to map thereof no. 2615 filed in the office of the County Recorder of San Diego County on January 20, 1950; excepting therefrom that portion thereof heretofore or now lying below the mean high tide line of the Pacific Ocean.

APN:   346-050-02

Address:   8466 El Paseo Grande

**Nicolas and Patricia Marsch**
**Owner of Ocean Terrace, Lot 4:**

_____
Nicolas Marsch

_____
Patricia Marsch

Legal Description:   Lot 4 of Ocean Terrace, in the City of San Diego, County of San Diego, State of California, according to map thereof no. 2615 filed in the office of the County Recorder of San Diego County on January 10, 1950; excepting therefrom that portion, if any, heretofore or now lying below the mean high tide line of the Pacific Ocean.

APN:   346-050-04-00

Address:   8460 El Paseo Grande

*Signature block continued on next page*

16167

**Sulpizio Family Trust Dated June 15, 1994**
**Owner of Ocean Terrace Lot 5:**

By: _____
Richard Sulpizio
Trustee of the Sulpizio Family Trust
Dated June 15, 1994

By: _____
Gaby Sulpizio
Trustee of the Sulpizio Family Trust
Dated June 15, 1994.

| | |
|---|---|
| Legal Description: | Parcel 1: Lot 5 of Ocean Terrace, in the City of San Diego, County of San Diego, State of California, according to map thereof no. 2615, filed in the office of the County Recorder of San Diego County, January 20, 1950. |
| | Parcel 2: An easement for the permanent use of the seven-foot sidewalk located on lots 2, 3 and 4 of said Ocean Terrace, east of and adjacent to the existing sea wall as said sea wall is shown on side map of said Ocean Terrace no. 2615, for access to beach steps. |
| APN: | 346-050-05-00 |
| Address: | 8454 El Paseo Grande |

N:\1\1902\58427\Trans\Relinquishment of Restrictions v3.026.doc

Page 3 of 3

**NOTARY ACKNOWLEDGEMENT FOR 8466 EL PASEO GRANDE,
OCEAN TERRACE, LOT 2**

STATE OF __CALIFORNIA__      )
                             ) ss.
COUNTY OF __SAN DIEGO__      )

On __APRIL 28, 2005__, before me, __SHARON SADDLER__, Notary Public, personally appeared __WARNER C. LUSARDI__, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____      (Seal)

```
SHARON R. SADDLER
COMM. # 1382542
NOTARY PUBLIC ● CALIFORNIA
SAN DIEGO COUNTY
Comm. Exp. JAN. 31, 2007
```

**16170**

**NOTARY ACKNOWLEDGEMENT FOR 8454 EL PASEO GRANDE,
OCEAN TERRACE, LOT 5**

STATE OF _CALIFORNIA_ )
                        ) ss.
COUNTY OF _SAN DIEGO_ )

On _MARCH 7, 2005_, before me, _SYLVIA J BARONE_, Notary Public,
personally appeared _RICHARD SULPIZIO & GABY SULPIZIO_, personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s)
on the instrument, the person(s), or the entity upon behalf of which the person(s) acted, executed
the instrument.

    WITNESS my hand and official seal.

Signature _Sylvia J Barone_        (Seal)

SYLVIA J. BARONE
Commission # 1347556
Notary Public - California
San Diego County
My Comm. Expires Mar 20, 2006

16169

**NOTARY ACKNOWLEDGEMENT FOR 8460 EL PASEO GRANDE,
OCEAN TERRACE, LOT 4**


STATE OF *California*    )
                         ) ss.
COUNTY OF *San Diego*    )


On *May 3rd 2005*, before me, *Melanie Halley*, Notary Public, personally appeared *Nicolas & Patricia Marsch*, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____    (Seal)

MELANIE HALLEY
Commission # 1458161
Notary Public - California
San Diego County
My Comm. Expires Dec 23, 2007

JS 44 (Rev. 12/07)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS

JOSEPH CARDENAS, MACHELLE CARDENAS, and EL PASEO GRANDE, LLC

### DEFENDANTS

ROBERTSON WHITTEMORE, individually and as trustee, etc.

10 AUG 30 PH 4:00

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   San Diego
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

'10 CV 1808 W     CAB

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Miltner Polk & Menck, APC, 402 W Broadway Ste 800, San Diego, CA 92101, 619-615-5333

Attorneys (If Known)

Evelyn F. Heidelberg, Esq. Procopio, Cory, Hargreaves & Savitch LLP, 525 B Street, Ste 2200, San Diego, CA 92101

### II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                             and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☒ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

### V. ORIGIN   (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 32 1332 et seq

Brief description of cause:
Declaratory Relief, Trespass to Real Property, Injunction

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 250,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

### VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   08/30/2010

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  1739   AMOUNT  $350   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

08-30-10

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS017439
Cashier ID: mbain
Transaction Date: 08/30/2010
Payer Name: MILTNER LAW GROUP
--------------------------------
CIVIL FILING FEE
 For: CARDENAS V WHITTEMORE
  Case/Party: D-CAS-3-10-CV-001808-001
  Amount:        $350.00
--------------------------------
CHECK
  Check/Money Order Num: 4646
  Amt Tendered:  $350.00
--------------------------------
Total Due:       $350.00
Total Tendered: $350.00
Change Amt:      $0.00


There will be a fee of $45.00
charged for any returned check.
```