# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH CARDENAS and MACHELLE CARDENAS, individuals; and EL PASEO GRANDE, LLC, an Arizona limited liability company,<br><br>                Plaintiffs,<br>vs.<br><br>ROBERTSON WHITTEMORE, individually and as trustee of the SUZANNE WHITTEMORE MARTIAL TRUST U/D/T/, DATED APRIL 27, 1995, as trustee of the SUZANNE WHITTEMORE BYPASS TRUST U/D/T, DATE APRIL 27, 1995, and as trustee of the ROBERTSON WHITTEMORE LIVING TRUST, DATED APRIL 27, 1995, and DOES 1 through 10, inclusive,<br><br>                Defendants. | CASE NO. 10cv1808-LAB-KSC<br><br>**ORDER DENYING PLAINTIFFS' MOTION RE: NEWLY DISCOVERED EVIDENCE** |

      At the pretrial conference on October 30, 2012, Plaintiffs represented that they had discovered a previously-unknown witness, who had owned a sixth lot in the development at issue here. In its order following the pretrial conference (Docket no. 91), the Court gave Plaintiffs leave to file a late motion for summary judgment based on the evidence they had found. The order also permitted Defendants to file an opposition, and provided that no hearing would be held unless later ordered.

The new evidence concerns a sixth lot in the Ocean Terrace subdivision. While counsel for both sides knew about lots 1 through 5, Plaintiff's counsel represents that she only recently found out about the sixth lot, and was able to track down a grandson of its owner. Plaintiff's counsel represented that she believed this grandson, Louis Murphey, might have critical information.

The motion requests leave to file a motion for partial summary judgment. The motion also requests leave to amend the claims to take the new evidence into account, and for additional discovery.

**Additional Discovery**

Discovery in this case finally closed on January 13, 2012. Under Fed. R. Civ. P. 16, the Court has discretion whether to reopen discovery or to hold the parties to discovery cutoff dates. *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1027 (9th Cir.2006) (holding that trial court had discretion to deny motion to reopen discovery, even if additional discovery might have revealed highly probative evidence).

The motion discusses the history of the discovery process, in an effort to show why the new witness, Louis Murphey, was not located earlier. It explains that although Plaintiffs' counsel attempted to track down descendants of the purchasers of lots 1 through 5 of the Ocean Terrace tract, no one apparently knew that there had been a sixth lot, which Murphey's family owned. It appears all parties assumed the five lots mentioned in the Declaration of Restrictions were the only lots in the subdivision. The motion explains that it was only when Plaintiff's counsel looked closely at a large copy of the original map of the subdivision from 1950 was it discovered that there had been a sixth lot. While the motion explains in detail how Plaintiff's counsel found out about the sixth lot, it doesn't explain why the sixth lot couldn't have been discovered earlier.

The motion does not make completely clear when Plaintiff's counsel first saw the original subdivision map. (Decl. of Teresa Polk in Supp. of Ps.' Mot. (Docket no. 92-2), ¶ 4 (stating that, on or around October 9, 2012, Plaintiff's counsel obtained a larger copy of the original subdivision than she had previously seen). The implication seems to be that earlier

copies of the map that Plaintiff's counsel saw were too small to reveal the existence of a sixth lot. But on review of even the small map attached as an exhibit (Ex. A at 2), the presence of a sixth lot is obvious. And, as Defendants point out, the original complaint refers to the same subdivision map, which means Plaintiffs were aware of it before discovery even began.

Even assuming Plaintiff's counsel first obtained the subdivision map after the close of discovery, the fact remains that it could have been obtained at any time. Accepting, *arguendo*, Plaintiffs' contention that the presence of any additional lots in the subdivision could affect the validity of restrictions on the other five lots, Plaintiffs were on notice of the need to confirm their assumptions about the subdivision's history, especially the number of lots. It bears emphasis that Plaintiffs were not misled about this either by other parties or by inaccurate records, or hindered in their search.. Rather, it appears they just didn't find the sixth lot because they didn't look for it. And because they did not know about the sixth lot, they didn't know to look for its owner, which would have led them to the owner's grandson Louis Murphey.  Because Plaintiffs were not diligent, the request to reopen discovery is **DENIED**.

**Effect of Additional Evidence**

While Plaintiffs will not be given leave to conduct additional discovery, the question remains whether they should be permitted to amend their claims to include new theories based on the evidence they have, or might be able to present at trial.

Louis Murphey lives in Tucson, Arizona, and Plaintiffs' motion suggests he is not eager to appear as a witness in this case. So in all likelihood, he will not be available to testify. But even assuming he were available, his testimony would likely be inadmissible hearsay. It does not fall within exceptions to the hearsay rules in Fed. R. Evid. 803(19) or (20); 804(b)(4); or 807.[1]

---

[1] Even though this Court is sitting in diversity, the *Erie* doctrine does not require the application of California's evidence code. *See Wray v. Gregory*, 61 f.3d 1414, 1421 (9th Cir. 1995) ('[T]he Federal rules of Evidence are not subject to the Rules of Decision Act or to *Erie*.") That being said, it does not appear that a California state court would admit such

What is more, Murphey's observations, even if admissible, would not be particularly probative. Plaintiff's counsel says she spoke with him by phone, and received a follow-up message from him. (Polk Decl., ¶ 8.) Murphey initially said he thought he might have a box of old photographs and records relating to Ocean Terrace, but later said all he had were the closing papers from sale of the lots. His testimony would amount to his impressions of his grandfather, John Murphey's, management of the property.

According to the proffer, Louis knew that John developed the Ocean Terrace lots, and thought that the reason John insisted on the restrictions was to preserve only direct views of the ocean and not lateral views. Even accepting this as true, all it does is shed light on what he thought was most important. Developers and landowners frequently reserve rights they don't particularly care about or expect to need, particularly where there is little or no disadvantage to their doing so. The proffered evidence doesn't purport to show that John Murphey or any of the other original parties understood the restrictions as not protecting lateral views.

The other piece of new evidence is the subdivision map showing the sixth lot, which neither party questions. This is the type of document the Court can take judicial notice of at any time. *See* Fed. R. Evid. 201. Plaintiffs argue that the existence of a sixth lot in the subdivision could undermine both parties' experts' opinions. (Polk Decl., ¶ 14.) But Plaintiffs don't proffer any evidence (such as the declaration of their own expert) that would support such an inference. The Court will not foreclose either party from questioning experts about the effect of the sixth lot on the their opinions, but at this point Plaintiffs have offered no reason to believe it would undermine their opinions or change their testimony materially.

**What Law Governs**

Plaintiffs have argued that the existence of the sixth lot in the original subdivision affects the law governing the validity of restrictions *ex ante*. They suggest that, before they

---

evidence either. *See* Cal. Evid. Code §§ 1311 (exception for statements about personal history); 1321--22 (exceptions for reputation in community concerning public interest in property, boundaries of land, or customs affecting land); § 1323 (exception for statement concerning the boundary of land).

discovered the sixth lot, they assumed the case was governed by *Citizens for Covenant Compliance v. Anderson*, 12 Cal.4th 345 (1995). *Citizens* applies retroactively, *id*. at 367, as would the Davis-Stirling Common Interest Development Act, Cal. Civ. Code §§ 1350 *et seq.* Plaintiffs argue the Davis-Stirling Act doesn't apply here because Ocean Terrace isn't a common interest development. They argue that, because they now know there was a sixth lot, *Citizens* doesn't apply either, because the Declaration of Restrictions didn't mention it, and thus didn't create a common plan for the subdivision. And because neither retroactive provision of law applies, they contend, the Court should apply the law as it existed at the time, *i.e.*, 1950. Under that law, they argue, the Declaration of Restrictions would have been void *ex ante*.

A good deal of this argument is based on facts (such as recordation dates) Plaintiffs already knew about, or could have known about. (*See, e.g.,* Mem. in Supp. of Motion, 10:12–17 (discussing dates deeds were signed and recorded, and Declaration of Restrictions was recorded).) As discussed above, this includes the sixth lot. There is no reason to allow Plaintiffs to amend and move for partial summary judgment on the basis of facts they knew about, or could have known about, before the motion cut-off date.

But even if the Court were to reach the issue, it appears *Citizens* would govern. That decision simplified what the state supreme court determined was an uncertain system of rules. It announced a new rule:

> [I]f a declaration establishing a common plan for the ownership of property in a subdivision and containing restrictions upon the use of the property as part of the common plan is recorded before the execution of the contract of sale, describes the property it is to govern, and states that it is to bind all purchasers and their successors, subsequent purchasers who have constructive notice of the recorded declaration are deemed to intend and agree to be bound by, and to accept the benefits of, the common plan; the restrictions, therefore, are not unenforceable merely because they are not additionally cited in a deed or other document at the time of the sale.

*Citizens*, 12 Cal.4th at 349. The court explained this rule in more general terms later in the opinion:

/ / /

/ / /

> In essence, if the restrictions are recorded before the sale, the later purchaser is deemed to agree to them. The purchase of property knowing of the restrictions evinces the buyer's intent to accept their burdens and benefits. Thus, the mutual servitudes are created at the time of the conveyance even if there is no additional reference to them in the deed.

*Citizens*, 12 Cal.4th at 363. The decision requires recordation before the contract of sale, so that buyers know what they are purchasing. *Id*. at 364–65.

Plaintiffs attempt to limit *Citizens*' holding to situations where the restrictions apply to all lots in a subdivision, but *Citizens* itself does not make this distinction. Plaintiffs do not attack the restrictions as illegal or void simply because they do not apply to one parcel within the subdivision, but instead argue it means the Court should rely on the law as it existed in 1950.

Adopting Plaintiffs' position would run counter to *Citizens*' reasoning. *Citizens* adopts a rule under which purchasers who want to know what restrictions property is subject to need only search the records pertaining to that lot. 12 Cal.4th at 362. If a purchaser of lots 1 through 5 did that, he or she would find the Declaration of Restrictions. If Plaintiffs' position were the law, the purchaser would also need to determine whether there were any other lots in the subdivision that were not mentioned in or subject to the Declaration of Restrictions. If there were, the purchaser would then would have to look to a different body of law to determine whether the restrictions were valid. The fact that no party or counsel until recently knew about the sixth lot illustrates the point that such a search is not routine for purchasers of land. The rule announced in *Citizens* precludes such a result. The Court therefore concludes *Citizens* controls, and not the law as it existed in 1950.

**Conclusion and Order**

Plaintiffs' requests for additional discovery, for leave to amend, and for leave to move for summary judgment, are **DENIED**. Because the sixth lot is visible on the subdivision map listed as an exhibit, the parties will not be precluded from questioning witnesses about this lot simply because it is was not the subject of earlier briefing. But the questioning must of course be relevant and otherwise proper.

/ / /

1  The proposed pretrial order the parties submitted included issues that this order has
2  decided, and those will be redacted before the order is issued. With regard to some issues,
3  however, it is unclear whether the issue is foreclosed, and those have not been redacted.[2]
4  The fact that they are included in the pretrial order does not, however, mean that the Court
5  has reconsidered this order.
6  Finally, although the Court previously issued a scheduling order for motions in limine,
7  the case is to be tried by the Court without a jury. The parties should therefore make
8  objections and raise any other issues contemporaneously rather than filing motions in limine.

**IT IS SO ORDERED**.

DATED: January 18, 2013

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[2] For example, section IX.5 of the forthcoming order gives as an issue for trial "On what issues, if any, do subsequent changes in the law apply retroactively to determine the validity, enforceability, and legal implications of the Declaration of Restrictions?"